LUIS A. CARRILLO, Esq. SBN 70398
MICHAEL S. CARRILLO, Esq. SBN 258878
LAURA M. JIMENEZ, Esq. SBN 237273
**CARRILLO LAW FIRM, LLP**
1499 Huntington Drive, Suite 402
 South Pasadena, CA 92030
Tel: (626) 799-9375
Fax: (626) 799-9380

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MATEO D,** A MINOR BY AND THROUGH HIS GUARDIAN AD LITEM, MARITZA DIAZ; **JORGE DIAZ; AND MODESTA DIAZ.**<br><br>Plaintiffs,<br><br>v.<br><br>**COUNTY OF SAN BERNARDINO, SHERIFF-CORONER SHANNON D. DICUS, DOES 1 THROUGH 20, INCLUSIVE**<br><br>Defendants. | **Case No.:**   5:22-cv-1357<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **DEPRIVATION OF CIVIL RIGHTS, 42  U.S.C. § 1983, WRONGFUL DEATH;**<br>2.  **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983, *MONELL* VIOLATIONS;**<br>3. **DEPRIVATION OF CIVIL RIGHTS, 42 U.S.C. § 1983, SUPERVISOR LIABILITY;**<br>4. **NEGLIGENCE/WRONGUL DEATH, CAL. GOV'T CODE § 844.6(d);**<br>5. **VIOLATION OF GOVERNMENT CODE §845.6 – FAILURE TO PROVIDE IMMEDIATE MEDICAL CARE; and**<br>6. **VIOLATION OF THE ADA, 42 U.S.C. § 12101, and CALIFORNIA UNRUH ACT, CIVIL CODE §51.**<br><br>**DEMAND FOR JURY TRIAL** |

# I.    JURISDICTION AND VENUE

1.    This is a lawsuit for monetary damages and is brought pursuant to 42 U.S.C. section 1983, et seq., and the Eighth and Fourteenth Amendments to the United States Constitution, for wrongful death and violation of constitutional rights by Defendants, Sheriff-Coroner Shannon D. Dicus, and San Bernardino County Sheriff's Department deputies and San Bernardino County jail staff. Jurisdiction is founded on 28 U.S.C. sections 1331 and 1343 and the aforementioned statutory and Constitutional provisions. State law claims for wrongful death, negligence, and failure to summon medical care are alleged as well. Plaintiffs invoke the Court's supplemental jurisdiction pursuant to 28 U.S.C. section 1367(a) to consider the state law claims.

2.    On or about December 10, 2021, each Plaintiff timely and properly filed an administrative claim with the County of San Bernardino, in compliance with the requirements of Section 910 of the California Government Code. On or about March 3, 2022, each Plaintiff's claim was denied in its entirety.

3.    Plaintiffs allege that this complaint was filed within the statutory requirements as mandated by California law for claims against governmental entities and agents.

# II.    PARTIES

4.    At all times relevant, this action arises from the preventable death of Jorge Antonio Diaz Millan[1] (hereinafter "DECEDENT"), who at all times mentioned herein was an individual residing in the County of San Bernardino, State of California.

5.    Plaintiff Mateo D., is the son of DECEDENT, who at all times mentioned herein was an individual residing in the County of San Bernardino, State of California, and sues both in his individual capacity as the son of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff MATEO D. seeks both survival and wrongful death damages.

---

[1] Decedent Jorge Diaz's full and complete name is Jorge Antonio Diaz Millan. His father's name is Jorge Antonio Diaz but decedent was not a junior. Accordingly, for ease and not out of disrespect, Decedent will be referred to as Jorge and/or Decedent in this complaint and his father, will be referred to as Mr. Diaz.

6.      Plaintiff Jorge Antonio Diaz (hereinafter "Mr. Diaz"), is the father of DECEDENT, who at all times mentioned herein was an individual residing in the County of San Bernardino, State of California, and sues both in his individual capacity as the father of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff Mr. Diaz seeks both survival and wrongful death damages.

7.      Plaintiff Modesta Diaz is the mother of DECEDENT, who at all times mentioned herein was an individual residing in the County of San Bernardino, State of California, and sues both in her individual capacity as the mother of DECEDENT, and in a representative capacity as successor-in-interest to DECEDENT. Plaintiff Modesta Diaz seeks both survival and wrongful death damages.

8.      On information and belief, Plaintiffs allege that at all relevant times, Defendant COUNTY OF SAN BERNARDINO, (hereinafter "COUNTY"), was and is a municipal corporation, existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including but not limited to the San Bernardino County Sheriff's Department, and the West Valley Detention Center, their agents and employees. At all times relevant, COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the San Bernardino County Sheriff's Department and the West Valley Detention Center, and that their employees and agents complied with the laws of the State of California and the United States. COUNTY purposely conducts substantial business activities in the State of California.

9.      At all times relevant, COUNTY was the employer of the Defendant, Sheriff-Coroner SHANNON D. DICUS and DOES 1-20, inclusive.

10.      Defendant Sheriff-Coroner SHANNON D. DICUS ("DICUS") is sued herein in his official and individual capacity because as the San Bernardino County Sheriff-Coroner, Defendant, Shannon D. Dicus was and is acting under color of law within the course and scope of his duties as a sheriff and/or a managerial, supervisorial,

and policymaking employee for the Defendant, COUNTY and with the complete authority and ratification of his principal, Defendant COUNTY.

11.     Defendant DICUS is the Sheriff-Coroner for San Bernardino County and in charge of the San Bernardino County Jails, including the West Valley Detention Center ("WVDC"), where DECEDENT resided at the time of his death. By California law, the Sheriff is answerable for the safekeeping of inmates in his custody. Cal. Gov't Code §§26605, 26610; Cal. Pen. Code §4006. Sheriff-Coroner DICUS was responsible for the management and control of all San Bernardino County Jails, was responsible for the administration of WVDC; for the selection, promotion, supervision, training, discipline and retention of agents and employees working within the WVDC, including custodial staff, counselors, advisors, nurses, doctors, physician assistants, medical staff, mental health staff, education staff, and supervisors; and for the implementation of policies and procedures at WVDC. He was responsible for the care, custody and control of all inmates housed in WVDC. Sheriff-Coroner DICUS was regularly provided with reports concerning the treatment of mentally ill inmates, improper classification of inmates in the jails, treatment and housing of inmates with violent propensities, jail homicides and other violations involving housing, mental health care, medical care, and the treatment of inmates at WVDC. Pursuant to California law and his duties as the Sheriff-Coroner of San Bernardino County, Sheriff-Coroner DICUS is sued in his individual capacity, as a supervisor for his own culpable action or inaction in the training, supervision or control of his subordinates, or his acquiescence in the constitutional deprivation which this Complaint alleges, or for conduct that showed reckless or callous indifference for others. Sheriff-Coroner DICUS's affirmative conduct involves his knowing failure to ensure enforcement of policies, rules or directives that set in motion a series of acts by others which he knew or reasonably should have known would cause others to inflict a constitutional injury on DECEDENT.

12.     Plaintiffs are informed and believe and thereon allege that Defendants sued herein as DOES 1 through 20, inclusive, were employees of the County of San

Bernardino, including but not limited to deputies and civilian staff of the San Bernardino County Sheriff's Department, deputies and civilian staff of the West Valley Detention Center, and/or final policy makers for the COUNTY, and were at all relevant times acting in the course and scope of their employment and agency with the Defendant COUNTY, and the acts and omissions of the said DOE Defendants were the proximate cause of the injuries and losses suffered by Plaintiffs and the death of DECEDENT. DOES 1-20 were acting within the complete authority and ratification of their principal, Defendant COUNTY. Plaintiffs are currently unaware of the true identities of these DOE Defendants, but will amend the Complaint to name them with their true names as soon as the same is ascertained. Plaintiffs allege that in doing the acts and omissions herein alleged, said DOE Defendants were employed as employees, agents, or servants of the Defendant COUNTY.

13.    On information and belief, at all times relevant, the individual Defendants, including DOES 1-20, were residents of San Bernardino County.

### III.    GENERAL ALLEGATIONS

14.    Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, each of the Defendants was the agent and/or employee and/or co-conspirator of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the scope of such agency, employment and/or conspiracy, and with the permission and consent of other co-Defendants.

15.    Each paragraph of this complaint is expressly incorporated into each cause of action which is a part of this Complaint.

16.    The acts and omissions of all Defendants were engaged in maliciously, callously, oppressively, wantonly, recklessly, and with deliberate indifference to the rights of Plaintiffs.

//

//

## IV.    **FACTUAL ALLEGATIONS**

**A. BACKGROUND**

17.    On October 6, 2021, Jorge was 25 years old. He had one child, Plaintiff Mateo D., five (5) years old.  Jorge played a significant role in raising Plaintiff Mateo D.

18.    Prior to October 6, 2021, DECEDENT was diagnosed with mental illness, including but not limited to a diagnosis of schizophrenia, depression, anxiety and bipolar disorder and he had a known history of prior psychiatric hospitalizations.

19.    On or about October 2, 2021, DECEDENT was remanded to the custody of the San Bernardino Sheriff's Department ("SBSD") and he was housed in the West Valley Detention Center in Rancho Cucamonga, California. Prior to DECEDENT's October 2, 2021 incarceration at the San Bernardino County West Valley Detention Center, DECEDENT had been previously incarcerated and DEFENDANTS knew or should have known that DECEDENT had been diagnosed with severe mental illness and had been assigned specialized housing.

20.    On October 6, 2021, DECEDENT was housed in a cell with cell-mate Caesar Wilkinson ("WILKINSON"). On October 6, 2021, WILKINSON violently beat DECEDENT, while both were in custody at the West Valley Detention Center. Plaintiffs are informed and believe that sometime after the violent beating, DECEDENT was found unresponsive on the floor of his cell in medical distress and was eventually transported to the hospital. On October 16, 2021, Jorge died as a result of the injuries he sustained during the violent physical attack by WILKINSON.

21.    Plaintiffs are informed and belief and thereon allege that WILKINSON's violent propensities was known to defendants, and each of them, well prior to being placed in a cell with DECEDENT. Defendants and each of them, knew that placing DECEDENT and WILKINSON together posed a serious and obvious risk of harm to DECEDENT. Placing DECEDENT in an unsupervised cell with WILKINSON created a heightened and substantial risk of harm to DECEDENT.

22.     Defendants, and each of them, through their personal knowledge, positions at the West Valley Detention Center and/or access to information about WVDC inmates (including WILKINSON and DECEDENT), had knowledge that WILKINSON posed a direct threat to other inmates, including DECEDENT, given his propensity for violence and/or prior attacks against WVDC inmates. Plaintiffs are informed and believe and thereon allege that defendants, and each of them, possessed knowledge that WILKINSON posed a direct and particularized threat to DECEDENT. This threat was compounded by his criminal history.

23.     Defendants, and each of them, failed to take adequate measures to extinguish the threat posed by WILKINSON, failed to adopt or implement adequate policies or procedures to segregate violent persons such as WILKINSON from other inmates after learning of their violent propensities, failed to train Defendants adequately, failed to adopt or implement policies to ensure correctional employees had sufficient information about inmates when undertaking housing assignments. These acts of defendants, and each of them, were done in conscious disregard of an excessive risk to DECEDENT's health and safety.

24.     Plaintiffs are informed and believe and thereon allege that the planned attacks and violence perpetrated by inmates such as WILKINSON, against other inmates is longstanding, pervasive, and well-documented such that defendants, and each of them, knew that placing DECEDENT in a cell with an inmate with known violent tendencies, such as WILKINSON would pose a substantial risk to his health and safety.

25.     Plaintiffs are informed and believe and thereon allege, there was woefully inadequate supervision of DECEDENT by Defendants. Further, having the authority to make a medical housing assignment, DEFENDANTS, failed to house DECEDENT appropriately. DECEDENT should have been more appropriately assigned to specialized housing due to his gravely disabled mental status and inability to care for himself but instead, Defendants placed DECEDENT in general population at the West Valley

Detention Center, in a two-person cell with a cell-mate who was known to have violent propensities, where DECEDENT had no additional monitoring or supervision.

26.    Defendants did not adequately assess DECEDENT to determine if he could be safely housed in the West Valley Detention Center in a two-man cell. DECEDENT's condition required placement in specialized mental health housing but Defendants failed to request such placement and failed to adequately determine the appropriate unit that DECEDENT should have been assigned to within the WVDC to ensure that DECEDENT's condition and safety could be appropriately monitored and treated.

27.    Defendants housing assignment for DECEDENT also did not address the known and obvious mental health illness conditions from which he was suffering. DECEDENT'S serve psychiatric illnesses, required him to take medication and Defendants were aware that DECEDENT's mental health condition prevented him from being placed in a two-man cell, with an inmate with known violent tendencies who posed a substantial risk to his health and safety, and placed him at further risk of a brutal attack such as the one he suffered by WILKINSON.

28.    It is these individuals' deliberate indifference to DECEDENT's serious medical needs that led to his death. Further, the failure of Defendants, to implement adequate protocols and training was also a substantial factor leading to DECEDENT's death; these failures form the basis for the Fourteenth Amendment and wrongful death claims alleged herein. Given DECEDENT's imminent mental illness, it is glaringly obvious that DECEDENT should have been monitored, evaluated, medicated, and properly housed upon intake.

29.    On information and belief, Defendants failed to take well-established safety measures during DECEDENT's incarceration at the West Valley Detention Center. Knowing that DECEDENT suffered from severe mental illnesses, Defendants intentionally and callously assigned DECEDENT to a two-person cell, with an inmate who had known violent propensities, knowing that DECEDENT would not receive additional monitoring, supervision or medical attention.

## V.   PARTICIPATION, STATE OF MIND AND DAMAGES

30.   All Defendants acted without authorization of law.

31.   Each Defendant participated in the violations alleged herein, or directed the violations alleged herein, or knew of the violations alleged herein and failed to act to prevent them. Each Defendant ratified, approved or acquiesced in the violations alleged herein.

32.   As joint actors with joint obligations, each Defendant was and is responsible for the failures and omissions of the other.

33.   Each Defendant acted individually and in concert with the other Defendants and others not named in violating Plaintiffs' rights.

34.   Each Defendant acted with a deliberate indifference to or, reckless disregard for, an accused's rights for adequate mental health care and safety in a custodial facility.

35.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, DECEDENT suffered great fear, physical and mental suffering, anguish, confusion, anxiety, nervousness, and ultimately, loss of life during the time period in which Defendants failed to provide appropriate housing, psychiatric care and treatment for his urgent psychiatric condition, and in particular, suffered acute and unmitigated mental and physical suffering during the hours preceding his death on October 16, 2021.

36.   As a direct and proximate result of the aforesaid acts, omissions, customs, practices, policies and decisions of the Defendants, Plaintiffs have suffered great mental and physical pain, suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarrassment, harm to reputation, and apprehension, which have caused Plaintiffs to sustain damages in a sum to be determined at trial.

37.   As a further result of the conduct of each of these Defendants, Plaintiffs have been deprived of familial relationships, including the loss of their son and father, Jorge, and the emotional impact on their family unit as a whole.

38.     The aforementioned acts of the Defendants, and each of them, was willful, wanton, malicious, oppressive, in bad faith and done with reckless disregard or with deliberate indifference to the constitutional rights of the Plaintiffs, entitling Plaintiffs to exemplary and punitive damages from each defendant other than Defendant COUNTY in an amount to be proven at the trial of this matter.

39.     By reason of the above described acts and omissions of Defendants, Plaintiffs were required to retain an attorney to institute and prosecute the within action, and to render legal assistance to Plaintiffs that they might vindicate the loss and impairment of his rights, and by reason thereof, Plaintiffs request payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure §1021.5 and any other applicable provision of law.

## FIRST CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. §1983

### DELIBERATE INDIFFERENCE TO

### SERIOUS MEDICAL NEEDS AND SAFETY

### (Against All Defendants and DOES 1-20, Except Defendant COUNTY)

40.     Plaintiffs reallege paragraphs 1 through 39, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

41.     Title 42 of the United States Code, Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory subjects, or causes to be subjected, any person of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit at equity or other proper proceeding for redress.

42.     Each Defendant, acting under color of state law, through their own individual actions and through their policies, practices and customs, deprived DECEDENT of rights, privileges, and immunities secured by the Constitution and laws of the United States under the Eighth Amendment (made applicable to States via the

Fourteenth Amendment), by subjecting him, or allowing others to subject him, to cruel and unusual punishment.

43.     Defendants knew that DECEDENT faced a serious risk of violent assaults and attacks by inmates with violent propensities, which Defendants knew would be aggravated by DECEDENT's serious mental illness.

44.     Despite knowing that DECEDENT faced a serious and substantial risk of violent attacks by inmates with violent propensities, defendants placed DECEDENT into a cell with WILKINSON, an inmate with known propensities for violence.

45.     Prior to placing DECEDENT into a cell with WILKINSON, defendants knew that there was a substantial risk of violence when inmates including those with serious mental illness are placed with inmates with violent propensities. By placing DECEDENT into a cell with WILKINSON, defendants disregarded that obvious risk.

46.     Plaintiffs are informed and believe, and based on such information and belief, further allege that Defendants acted with deliberate indifference for DECEDENT's serious medical needs and safety, in that they:

      a. Failed to provide adequate psychiatric assessment, treatment and intervention; inappropriately housed Decedent while at the West Valley Detention Center instead of assigning/providing appropriate mental housing despite clear indications that he required more intensive treatment and supervision;

      b. Inappropriately assigned Decedent to a two-man cell in the West Valley Detention Center despite clear indications that his rapidly deteriorating mental condition required him to be housed in specialized mental health housing; ignored and/or failed to reasonably monitor, to provide security, and to prevent DECEDENT from being subject to abuse and physical harm while housed in the West Valley Detention Center;

      c. Inappropriately assigned Decedent to a two-man cell in the West Valley Detention Center despite clear indications that his cell mate Caesar

Wilkinson posed a serious and obvious risk of physical harm to DECEDENT; ignored and/or failed to reasonably monitor, to provide security, and to prevent DECEDENT from being subject to abuse and physical harm while housed in West Valley Detention Center;

d. Failed to provide medically indicated psychiatric care and assessment; and

e. Ignored DECEDENT's serious but treatable mental health condition.

Due to Defendants' deliberate indifference to the serious nature and life threatening risk of harm posed to DECEDENT, and their failure to timely intervene to provide reasonable security, monitoring and safety, adequate housing, psychiatric mental treatment and medical aid necessary to prevent serious harm to DECEDENT, he suffered preventable serious injury and harm on October 6, 2021.

47.   DECEDENT was subjected to deprivation of rights by these Defendants and DOES 1 through 20, and each of them, acting under color of law and of statutes, ordinances, regulations, customs and usages of the Law of United States, State of California, which rights included, but are not limited to, privileges and immunities secured to DECEDENT by the Fourteenth or Eighth Amendments to the United States Constitution and laws of the United States, and particularly: a) his right to access to mental health and medical care and treatment for his serious but treatable condition; b) his right to adequate, reasonable security, monitoring, supervision, classification and housing, each of which was also a cause of his serious injury and harm.

48.   As a direct and proximate cause of the aforementioned acts/failures to act of Defendants and each of them, DECEDENT and, in turn, Plaintiffs were injured as set forth above.

49.   Plaintiffs MATEO D. Mr. DIAZ, and MODESTA DIAZ, allege that these Defendants' wrongful conduct legally caused a deprivation of their constitutionally protected liberty interest in familial companionship, love and society of their father, all to his damage in an amount to be proven at trial according to proof.

50.     As a direct and proximate result of defendants' actions, DECEDENT and Plaintiffs have suffered, and will continue to suffer, physical, mental and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.D. § 1988, to an extent and in an amount subject to proof at trial.

51.     Plaintiffs are informed and thereon allege that defendants, and each of them, acted with malice toward DECEDENT/Plaintiffs, or acted with a willful and conscious disregard for the rights of DECEDENT/Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing defendants and to deter them and others from such conduct in the future.

## SECOND CLAIM FOR RELIEF

### DEPRIVATION OF CIVIL RIGHTS -- 42 U.S.C. §1983

### (Against Defendant COUNTY) – *MONELL* VIOLATIONS

52.     Plaintiffs reallege paragraphs 1 through 51 as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

53.     Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, Defendants COUNTY OF SAN BERNARDINO and the San Bernardino Sheriff's Department, acted with deliberate indifference, and conscious and reckless disregard to the safety, security and constitutional and statutory rights of DECEDENT, and engaged in the unconstitutional conduct and omissions.

54.     Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, Defendant COUNTY OF SAN BERNARDINO and the San Bernardino Sheriff's Department, with deliberate indifference, and/or conscious or reckless disregard to the safety and constitutional rights of DECEDENT, and other inmates with severe mental health conditions, maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied the policies, practices and customs set forth above, including, but not limited to: failure to provide adequate mental health services;

failure to mitigate or eliminate known environmental hazards prevalent throughout jail housing areas, including housing areas to which inmates with serious mental illness are assigned; failure to prevent inmates, including those with serious mental illness, from being housed with inmates with violent propensities; failure to provide appropriate custodial supervision of inmates including but not limited to those inmates with mental health conditions; inadequate intake screening and assessment for housing placement; inadequate monitoring and assessment of inmates' mental health conditions; insufficient mechanisms to ensure communication of relevant information between custodial, medical and mental health staff.

55.    Plaintiffs are informed and believe, and thereon allege, that, at all times herein mentioned, individual Defendants' wrongful conduct was the result of policies, practices and customs to subject inmates of the San Bernardino County Jails to unconstitutionally inadequate treatment and housing for all inmates, including inmates with mental health conditions; permit and promote unsafe conditions for inmates; and cover-up incidents of unconstitutional behavior by members of its SBSD custody staff.

56.    At all times herein mentioned, the County of San Bernardino and its Sheriff's Department, authorized and ratified the wrongful acts of the individual Defendants. The actions and inactions of the County of San Bernardino including it custody and medical staff, were known or should have been known to the policy makers responsible for San Bernardino COUNTY, and occurred with deliberate indifference to either the recurring constitutional violations elaborated above, and/or to the strong likelihood that constitutional rights would be violated as a result of failing to train, supervise or discipline in areas where the need for such training and supervision was obvious.

57.    The actions of the County of San Bernardino including its custody and medical staff, set forth herein were a motivating force behind the violations of Plaintiffs' and DECEDENT's constitutional rights as set forth in this complaint.

58.    As a direct and proximate result of Defendant COUNTY OF SAN BERNARDINO' policies, practices, and customs, Plaintiffs sustained injury and damage as proved.

59.    As a result of Defendants', and each of their, violations of Plaintiffs' and DECEDENT's constitutional rights as set forth herein, Plaintiffs were damaged as alleged above.

**THIRD CLAIM FOR RELIEF**

**DEPRIVATION OF CIVIL RIGHTS – 42 U.S.C. § 1983**

**FAILURE TO SUPERVISE, TRAIN AND TAKE CORRECTIVE**

**MEASURES CAUSING CONSTITUTIONAL VIOLATIONS**

**(Against Supervisory Defendants and DOES 1-20 Except Defendant**

**COUNTY)**

60.    Plaintiffs reallege paragraphs 1 through 59, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

61.    Plaintiffs are informed and believe and thereon allege that Defendants DICUS and DOES 1-20 knew, or in the exercise of reasonable care, should have known of a history and propensity and pattern at the time of this incident for employees of the San Bernardino County Jail to fail to provide safe housing, and reasonable security, monitoring and supervision of inmates such as DECEDENT; to fail to comply in implementing policies and procedures or ensuring the enforcement thereof; to fail to train and ensure that deputies, employees and medical care providers provide reasonable security and monitoring of inmates, such as DECEDENT; and that they provide prompt and competent access and delivery of mental health attention to inmates such as DECEDENT and to ensure that inmates such as DECEDENT are not housed with inmates who are known to have a propensity for violence. Defendants' disregard of this knowledge or failure to adequately investigate and discover and correct such acts or failures to act was a moving force which caused the violation of Plaintiffs' constitutional rights.

62.     Plaintiffs are informed and believe and thereon allege that prior to the incident alleged herein, Defendants DICUS and DOES 1-20, acting under the color of their authority as supervisory officers of deputies, counselors, physicians, nurses, staff and all mental health and medical care providers, and in the course and scope of their employment as such, committed similar acts of:

    a.  Failure to provide access to and delivery of mental health  and medical care and treatment for inmates at San Bernardino County with known mental disabilities;

    b.  Failure to provide adequate housing and properly classify inmates in the San Bernardino County Jails so that they would have access to and delivery of indicated mental  health and medical care;

    c.  Failure to provide safe housing to all inmates in the San Bernardino County Jails so that they are not housed with inmates with a propensity for violence;

    d.  Failure to provide adequate and reasonable monitoring to all inmates in the San Bernardino County Jails so that they are not subject to risk of violent assaults and attacks by inmates with violent propensities;

    e.  Failure to supervise their subordinates to ensure that staff, deputies and employees were implementing and complying with implementing policies and procedures to ensure the reasonable security and safety of inmates;

    f.  Discriminating against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

63.     Plaintiffs are further informed and believe and thereon allege that Defendants DICUS and DOES 1-20, knew, or in the exercise of reasonable care should have known, of this pattern or practice of unconstitutional violations, or the existence of facts which create the potential of unconstitutional acts, and these Defendants and DOES 1-20 had a duty to train and instruct their subordinates to prevent similar acts to other inmates, but failed to take steps to properly train, supervise, investigate or instruct

deputies, counselors, physicians and nurses, and/or agents or employees, and to retain deputies, counselors, physicians and nurses who had a history of inappropriate conduct, and as a result DECEDENT was harmed in the manner threatened by the pattern or practice.

64.     At all times herein mentioned, and prior thereto, Defendants had the duty to perform the following, and violated that duty:

   a.  To train, supervise, and instruct deputies, counselors, nurses, physician assistants, physicians, and other agents to ensure that they respected and did not violate federal and state constitutional and statutory rights of inmates;

   b.  To objectively investigate incidents of in-custody injury, deaths, inadequate classification and contraindicated housing, and to take remedial action;

   c.  To provide access to and delivery of mental and medical health care, intervention, treatment, follow-up, and attention to injured, or ill inmates, the lack of which resulted in serious injury or loss of life, and to provide access and delivery of competent mental and medical health care;

   d.  To periodically monitor the quality and adequacy of mental health and medical care, attention and treatment provided to mentally ill inmates;

   e.  To periodically monitor the competency of medical and custodial staffing to ensure that custodial deputies and staff were providing reasonable security to inmates with mental health disabilities at San Bernardino County Jails;

   f.  To periodically monitor the classification and housing of mentally ill inmates to ensure they have reasonable security and safety and are properly housed, and not housed with or exposed to persons with known dangerous propensities;

   g.  To comply with the statutory guidelines and regulations enacted for the protection of inmates held in a custodial setting;

   h.  To discipline and to establish procedures to correct past violations, and to prevent future occurrences of violation of constitutional rights of inmates, by

not condoning, ratifying, and/or encouraging the violation of DECEDENT's and other inmate's constitutional rights;

i. To periodically train custodial staff and counselors on understanding, recognizing, reporting and responding to issues of inmates' mental health care and treatment; and

j. Not to discriminate against inmates with known mental health disabilities by use of a disciplinary system that increases incarceration and imposes punishment for behavior resulting from or caused by their mental health disability.

65.   As a legal result of the conduct of Defendant DICUS and Does 1-20, as described above, Plaintiffs were damaged as alleged herein and as set forth above.

**FOURTH CLAIM FOR RELIEF**

**NEGLIGENCE RESULTING IN WRONGFUL DEATH**

**(CAL. GOV'T CODE § 844.6(d) & CAL. CODE CIV. PROC., §377.60)**

**(Against All Defendants)**

66.   Plaintiffs reallege paragraphs 1 through 65, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

67.   Defendants and each of them, owed a duty imposed by law to use reasonable care in conducting themselves as peace officers and housing inmates and in providing reasonable security and rendering access and delivery of mental and medical care, treatment and/or emergency services to DECEDENT for his mental health condition but breached their duty and were negligent in the performance of their duties and this negligence caused the death of DECEDENT.

68.   Defendants and DOE supervisors 1-20, acting within the course and scope of their employment with the County of San Bernardino had a duty to assure the competence of their employee/agents Defendants and DOES 1-20, but breached their duty and were negligent in the performance of their duties by selecting, hiring, training, reviewing, periodically supervising, failing to supervise, failing to evaluate the

competency of their Defendant deputies, counselors, physicians and/or employees and/or agents and retaining their Defendant deputies, counselors, physicians and/or employees and/or agents. This breach of the duty of careful selection, hiring, training, review, supervision, periodic evaluation of the competency, and retention of such officers, counselors and other staff created an unreasonable risk of harm to persons such as DECEDENT.

69.    The individually named Defendants breached their duty of care to observe, report, monitor and provide reasonable security regarding DECEDENT's condition and failed to prevent his death.

70.    Defendants and each of them failed to exercise the degree of care and caution that a reasonable and prudent person would exercise under like conditions and circumstances. Defendants failed to conform to a certain standard of conduct for the protection of DECEDENT against unreasonable risk of injury and death. The failure exposed DECEDENT/Plaintiffs to an unreasonable risk of harm.

71.    Defendants undertook the responsibility of providing correctional services to DECEDENT wherein defendants should have recognized and determined DECEDENT's compatibility to be housed with WILKINSON, especially in light of DECEDENT's severe mental illness, and failure to otherwise exercise reasonable care, DECEDENT suffered death, to his and Plaintiffs' damage.

72.    DECEDENT was particularly vulnerable in light of his incarceration and severe mental illness and relied on Defendants (who had control over him), for protection from violent assault, which is not part of the penalty that criminal offenders pay for their offenses against society.

73.    As a direct and legal result of the aforesaid negligence, carelessness and unskillfulness of Defendants, and each of them, and as a result of their breach of duty of care to DECEDENT, he was seriously injured and died and Plaintiffs have suffered the damages as alleged above.

74.   As a legal result of the aforesaid negligence and unskillfulness of Defendants, DECEDENT's trauma and injuries did not receive timely, appropriate and indicated intervention and treatment and his condition worsened and resulted in his death, and he suffered serious injury and harm as a legal cause of the negligent conduct of Defendants, thereby causing damage as alleged above.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF CALIFORNIA GOV'T CODE § 845.6**

**(Against All Defendants)**

75.   Plaintiff realleges paragraphs 1 through 74, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

76.   By virtue of the foregoing, Defendants, including but not limited to representatives of the County of San Bernardino  knew or had reason to know that DECEDENT needed immediate medical care which also required specialized housing and greater supervision; that he had serious and obvious mental and medical conditions that put the staff on notice that he should have had his medical and mental condition closely monitored; that on or before October 6, 2021, he needed greater supervision and protection and was not given such care. The failure to provide adequate housing, adequate medical care and adequate supervision, proximately caused his death.

**SIXTH CLAIM FOR RELIEF**

**VIOLATION OF AMERICANS WITH DISABILITIY ACT (ADA),**

**TITLE II, 42 U.S.C. §12101 et seq., THE REHABILITATION ACT, 29 U.S.C.**

**§794, AND CALIFORNA UNRUH ACT, CAL. CIVIL CODE §§51, et seq.**

**(Against All Defendants and Defendant COUNTY)**

77.   Plaintiffs reallege paragraphs 1 through 76, as well as any subsequent paragraphs contained in the complaint, as if fully set forth herein.

78.     DECEDENT was a "qualified individual," with a mental impairment that substantially limited his ability to care for himself and control his mental, medical or physical health condition as defined under the Americans with Disabilities Act (ADA), 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973 (RH), 29 U.S.C. §794 and Cal. Civ. Code §51, et seq., and qualified as an individual with a disability under California law, and he met the essential eligibility requirements of the County of San Bernardino' and San Bernardino Sheriff's Department's programs to provide mental and medical health care services for its inmate patients in the San Bernardino Sheriff's Department.

79.     Defendant San Bernardino COUNTY and its jails and mental health services are a place of public accommodation and a covered entity for purposes of enforcement of the ADA, 42 U.S.C. §12131 (2), under Section 504 of the Rehabilitation Act of 1973, and Cal. Civ. Code §51, seq., explicated by the regulations promulgated under each of these laws.

80.     Defendant San Bernardino County mental health services "engaged in the business of . . . health care," custody for persons whose "operations" fall within the definition of "program or activity" covered by the Rehabilitation Act, 29 U.S.C. Section 794(b).

81.     Under the ADA, San Bernardino County is mandated to "develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities and developmental disabilities. . ." and to ensure "that the personal and civil rights" of persons who are receiving services under its aegis are protected.

82.     Congress enacted the ADA upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problems." 42 U.S.C. §12101(a)(2).

83.     San Bernardino COUNTY is mandated under the ADA not to discriminate against any qualified individual on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. §12182 (a).

84.     Defendant San Bernardino COUNTY receives federal financial assistance for their jails, and therefore must comply with the mandates of the Rehabilitation Act, §504, which specifies that "program or activity" means all of the operations of … A department, agency, special purpose district, or other instrumentality of a State or of a local government.

85.     Defendant San Bernardino COUNTY and other Defendants violated the ADA and the RA and Cal. Civ. Code §51, et seq., and deprived DECEDENT and Plaintiffs of their federally and state protected rights by:

      a. failing to create and maintain a number of programs and services to protect the mentally disabled that operate in conjunction with San Bernardino COUNTY's jails;

      b. failing to provide services or accommodate DECEDENT with access to the programs and services of San Bernardino COUNTY'S designated mental health facilities within San Bernardino County Jails for persons who qualify for access and services under California and federal law;

      c. failing to provide services or accommodate DECEDENT as indicated and with appropriate classification, housing and monitoring for a person in their sole and exclusive custody who they knew was mentally disabled;

      d. failing to provide reasonable accommodations to people in custody with mental disabilities at their jails, and providing instead quality of care and service that is different, separate, and worse than the service provided to other individuals with the same disabilities;

e. failing to properly train its deputies, medical and mental health staff, employees and officers on how to peacefully respond, treat, and interact with disabled persons, such as DECEDENT; and

f. failing to comply with the U.S. Department of Justice requirements regarding care, treatment and security to persons with mental disabilities, resulting in discrimination against DECEDENT, under the ADA and RA.

86.   DECEDENT was denied the benefits of the services, programs, and activities of San Bernardino COUNTY which deprived him of mental health and medical health programs and services which would have provided the delivery of treatment, follow-up and supervision. This denial of programs and services was the result of his disability in that he was discriminated against because he was mentally ill and "gravely disabled," in that he suffered from conditions in which a person, as a result of a mental disorder, is unable to provide for his basic personal needs and to protect himself from harm. Defendants' failure to train their employees, and the denial of mental and medical health care, treatment, follow-up, training, supervision was result in the violation of Plaintiffs' constitutional rights.

87.   As a legal result of the acts and misconduct of the Defendants and each Defendant complained of herein, Jorge Antonio Diaz Millan died and Plaintiffs have suffered, are now suffering and will continue to suffer damages as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs MATEO D., JORGE DIAZ, and MODESTA DIAZ, request relief on their own behalf, and on behalf of the estate of Jorge Diaz, as follows, and according to proof, against each Defendant:

1.   For general and compensatory damages against each Defendant, jointly and severally, in an amount according to proof;

2.   Special damages against each Defendant, jointly and severally, in an amount according to proof;

3.    For punitive and exemplary damages against each Defendant, except the COUNTY OF SAN BERNARDINO, in an amount according to proof;

4.    For costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988, California Code of Civil Procedure § 1021.5 and as otherwise authorized by statute or law; and

5.    For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Respectfully submitted,

Dated: August 1, 2022

/s/
LUIS A. CARRILLO
Attorney for Plaintiff

## REQUEST FOR JURY

Plaintiffs hereby request a jury trial in this action.

Respectfully submitted,

Dated: August 1, 2022

/s/
LUIS A. CARRILLO
Attorney for Plaintiff

Complaint for Damages